UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 JUL 28 P 1:04

U.S. DISTRICT COURT

------------------------------------------------------------X

WILLIAM FANNING,

                             Plaintiff,

        -against-

GOLD SYSTEMS, INC.,

                             Defendant.

------------------------------------------------------------X

Civil No:

**305CV1202 VCH**

## COMPLAINT

Plaintiff William Fanning ("Plaintiff"), by and through his attorneys, the Law Offices of Anthony R. Minchella L.L.C., alleges and complains as follows:

### NATURE OF THIS ACTION

1.      Plaintiff, a former sales representative of Defendant Gold Systems, Inc. (the "Company" or "Gold Systems") brings this age discrimination lawsuit against his former employer and individual Defendants Terry Gold and Trever Renquist pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq., and the Connecticut General Statutes § 46a-60 et seq.

2.      Plaintiff is 68 years old and the former Gold Systems sales representative for the Northeast Region of North America. He was abruptly terminated on March 31, 2004 on the basis of his age -- he was the oldest employee at the Company by many years -- almost immediately after a significantly younger supervisor was put in place.

3.      The new supervisor, Trevor Renquist -- approximately 30 years of age and close to 40 years younger than him -- purportedly terminated him for low sales

figures. This reason is clearly pretextual. He had been a strong producer for the Company, an irrefutable fact demonstrated by the Company's own sales reports. In fact, the sales report for the first quarter of 2004 demonstrates that Plaintiff's sales figures ranked him at or near the top of the sales force.

4.      Moreover, although the president of the Company (Terry Gold) claimed that he was terminated due to low sales numbers and because he could not sell "non-Avaya" products, he was formally recognized by the Company for being the leading sales person for non-Ayaya products for the year 2003. Remarkably, he received this award just two months prior to his termination.

## THE PARTIES

5.      Plaintiff, a 68 year old male (date of birth 10/27/1936), resides in Wilton, Connecticut, and is a citizen of the United States. As an employee of the Company, Plaintiff worked from his home in Wilton, Connecticut, selling products on behalf of the Company throughout the State of Connecticut, the Northeast United States and beyond.

6.      Gold Systems, Inc. is a software development company that develops products and applications using Interactive Voice Response ("IVR"), Speech Recognition, and Computer Telephony Integration technologies, and integrates them into varied telephony and data environments. Upon information and belief, Terry Gold ("Gold"), who is in his 40's, is the Founder, Chief Executive Officer and President of Gold Systems. Also upon information and belief, Trever Renquist ("Renquist") is in his early 30's, is the Vice President of Sales of Gold Systems and was Plaintiff's direct supervisor.

2

7.    Gold System's corporate headquarters is located in Boulder, Colorado. The Company has in excess of 20 employees throughout the United States.

## JURISDICTION AND VENUE

8.    Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1343(a)(4). Jurisdiction as to Count Two lies pursuant to 28 U.S.C. § 1367. At all times relevant to this Complaint, the Company had employed in excess of 20 employees, is engaged in interstate commerce, and has had a yearly volume of business in excess of $500,000. Gold Systems meets the definition of "employer" under the applicable statutes.

9.    Plaintiff filed a timely charge of discrimination on the basis of age with the United States Equal Employment Opportunity Commission. He received a Dismissal and Notice of Rights from the Equal Employment Opportunity Commission, dated April 28, 2005. By overnight delivery on May 24, 2005, Plaintiff sent to the Connecticut Commission on Human Rights & Opportunities an Affidavit of Illegal Discriminatory Practice and related documentation. Venue is appropriate in this district because the events underlying this Complaint occurred within this district.

*Plaintiff's Exemplary Work History At Gold Systems*

10.    Plaintiff was hired in July 2000 as the General Manager for Gold Systems' Eastern Sales Region. His responsibilities were to create, staff, train and manage a remote regional sales team. As General Manager, he was involved in all sales transactions within his region.

11.    In March 2002, Plaintiff was appointed the Channel Manager for a new business partner, Aspect Communications ("Aspect"), a company where he was

3

employed for six years prior to coming to Gold Systems.  As Channel Manager, he brought together the Gold Systems sales force and the Aspect field sales force in order to increase sales of IVR software development.

12.    In January 2003, after numerous Company restructurings, Plaintiff became the Sales Representative for the entire Northeast Territory.  This territory spanned from Maryland north into Canada and west through Pennsylvania.

13.    When Plaintiff first took over the territory, he was not given any account files or documentation on prospective accounts.  He was given a pipeline report from his predecessor, however, after spending considerable time and effort meeting with his prospective accounts, it became evident that in order to procure sales for the Company, he would have to develop new business.

14.    Plaintiff worked hard to secure new business for the Company, spending many hours with potential clients in order to secure sales.

15.    In 2003, Plaintiff more than doubled the previous sales figures in the Northeast Territory.

16.    In January 2004, Plaintiff attended a Company conference where he was recognized as the top producer of non-Avaya sales for 2003 (sales are categorized as Avaya or non-Avaya sales at the Company).  It was a significant award and achievement presented at a Company-wide sales event.  Gold was in attendance.

**Gold Systems Terminates Plaintiff On The Basis Of His Age**

17.    Even though Plaintiff more than doubled the previous sales figures in his territory and was recognized as top producer of non-Avaya sales in 2003, he was

4

told that he was terminated "because of his numbers," or, in other words, because his sales figures were purportedly low.

18.     More specifically, at approximately 3:30 p.m. on March 31, 2004, Plaintiff called Renquist to request approval on a particular order.  He was shocked when Renquist told him, without any prior notice, that his employment with Gold Systems was terminated -- effective immediately.

19.     Plaintiff asked Renquist the reason for his termination.  Renquist replied that it was a "sales issue."

20.     Because Plaintiff knew that his termination was not, in actuality, based on his sales figures, he called Gold.  Gold told Plaintiff that he was terminated strictly because of his "numbers" and because Renquist believed that he "could not sell to the non-Avaya market."  Plaintiff immediately reminded him that just two months prior he was recognized at a sales meeting (which Gold attended) for selling the most non-Avaya business in the year 2003.  Realizing Plaintiff just proved the basis for his termination was false, Gold could offer absolutely no response and, in fact, remained completely silent.

21.     In 2003, Plaintiff sold more than thirty times as much non-Avaya business (approximately $557,694) as the next best regional sales manager (approximately $16,542).  In addition to being the highest producer of non-Avaya sales in 2003, he also was the third highest overall producer at the Company.

22.     For the first quarter of 2004, Plaintiff was the second highest producing sales person at the Company.  If you include a $40,000 sale for which he had a

"Statement of Work" signed on March 31, 2004 (the day he was terminated), he was actually the Company's *leading* salesperson in 2004.

23.     During Plaintiff's employment at Gold Systems he never received a poor performance evaluation or review. He did not receive complaints from previous Sales Department heads regarding his sales figures and, in fact, received recognition and praise.

24.     Renquist was appointed to the position of Vice President of Sales in February 2004, just one month prior to Plaintiff's termination. It is not a coincidence that one month after the appointment of an approximately 30-year-old Vice President, he was terminated. Renquist was biased -- he relied on a stereotype that an older worker, such as the Plaintiff, did not belong in a technology-based organization. To the contrary, Plaintiff had proven that he could achieve extremely high product sales.

25.     Upon information and belief, it is the Company's policy to place sales persons on a 60 or 90-day improvement program if their sales figures fell below expectations, in an effort to permit those employees an opportunity to improve their performance.

26.     Contrary to this policy, Plaintiff was never placed on an improvement plan. (Upon information and belief, he is one of, if not the only, sales person not placed on an improvement program before being terminated for low sales). This is telling – in that it shows that his age, not work performance, was the true reason for his termination.

**Significantly Younger, Less Productive Employees Were Not Terminated;**
**A Significantly Younger Worker Replaces Plaintiff**

27.     Gold Systems employees Chris Nelson, Cameron Reid, Chris Hiles, Tom Tasker, and Barbara Rigel, all of whom are regional sales managers and significantly younger than Plaintiff, sold significantly less than him to the non-Avaya market.    Chris Nelson, Chris Hiles, Tom Tasker, and Barbara Rigel have sold significantly less than him to the Avaya market as well.  Upon information and belief, each of these individuals is still employed at Gold Systems.

28.     Upon information and belief, Plaintiff's replacement, Andy Marcopulous, is close to 30 years younger than the Plaintiff.

29.     As a result of the discriminatory conduct against Plaintiff, he has suffered and continue to suffer severe emotional distress.

## FIRST CAUSE OF ACTION
### Age Discrimination in Employment Act of 1967

30.     Plaintiff realleges and incorporates by reference paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31.     Defendant's discrimination against Plaintiff on the basis of his age, e.g., terminating his employment while favoring less qualified, younger employees, constitutes willful age discrimination against Plaintiff in violation of the Age Discrimination of Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.

32.     In so doing, Defendant acted willfully, and with malice and/or reckless indifference to Plaintiff's rights.

33.    As a result of Defendant's actions as described above, Plaintiff has suffered, and will continue to suffer, damages including, but not limited to, loss of income.

### SECOND CAUSE OF ACTION
### C.G.S. § 46a-51 et seq.

34.    Plaintiff realleges and incorporates by reference paragraphs 1 through 33 as if fully set forth herein.

35.    Defendant's discrimination against Plaintiff on the basis of his age, e.g., terminating his employment while favoring less qualified, younger employees, constitutes willful age discrimination against Plaintiff in violation of C.G.S. § 46a-51 et seq.

36.    In so doing, Defendant acted willfully and with malice and/or reckless indifference to Plaintiff's rights.

37.    As a result of Defendant's actions as described above, Plaintiff has suffered, and will continue to suffer, damages including, but not limited to, loss of income, emotional distress and humiliation.

**WHEREFORE**, Plaintiff demands that judgment be entered in his favor against Defendant as follows:

A.    Back pay, back benefits, front pay and benefits and prejudgment interest;

B.    Compensatory and punitive damages;

C.    Costs and attorney fees;

D.    Liquidated damages;

E.    Such other relief as the Court deems just and proper.

8

**Jury Demand**

Plaintiff demands a trial by jury.

Plaintiff, William Fanning

Anthony R. Minchella (ct 18890)

LAW OFFICES OF ANTHONY R.
MINCHELLA L.L.C.
530 Middlebury Road
Suite 203-204B
Middlebury, CT  06762
(203) 758-1069
(203) 758-2074 Facsimile
anthonyminchella@sbcglobal.net