UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM FANNING, | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:05CV1202 (JCH) |
| | : | |
| v. | : | |
| | : | |
| GOLD SYSTEMS, INC., | : | MARCH 13, 2007 |
|     Defendant | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 38]**

**I.    INTRODUCTION**

The plaintiff, William Fanning ("Fanning"), brings this age discrimination lawsuit against his former employer, Gold Systems, Inc. ("Gold Systems"). In a previous Ruling on Defendant's Partial Motion to Dismiss [Doc. No. 28], this court dismissed Count II of Fanning's Complaint [Doc. No. 1], which alleged age discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 et. seq., for lack of subject-matter jurisdiction. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Gold Systems has now moved for summary judgment on Count I of Fanning's Complaint, which alleges discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA").

**II.    STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts

1

showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### III. FACTUAL BACKGROUND[1]

In July 2000, Fanning, who was then 63 years old, was hired by Gold Systems to be its General Manager for the Eastern Region. See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at ¶¶ 7-8 [Doc. No. 40]. Among the people who interviewed him were Terry Gold (age 41), Gold Systems' CEO, and Judy Feasby (age 55), Vice President of People, Culture and HR. Id. at ¶¶ 9, 11-12. The parties are in disagreement as to whether Trever Renquist (age 28), who was then Vice President of Development, interviewed Fanning, although Fanning agrees that Renquist gave a "green light" to the hiring manager regarding Fanning's hire. Id. at ¶ 9-10; see Plf.'s

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support his allegations.

Loc.R.Civ.P. 56(a)2 Statement ("Plf.'s Stat.") at ¶¶ 9-10 [Doc. No. 46].

Fanning hired several sales representatives upon first being hired, including Mike Clapp (age 26) and Dave Engelhart. See Def.'s Stat. at ¶¶ 15, 27; Plf.'s Stat. at ¶ 15. Shawn Myers (age 36) also reported to Fanning. See Def.'s Stat. at ¶¶ 16, 27. None of these salespeople met their sales quota for 2001. Id. at ¶ 18.

Fanning's first supervisor was Bob Jeschke (age 59), who was hired in January 2000 and terminated for poor sales performance in April 2001 and replaced by Steve Durgin. Id. at ¶¶ 20-21. In March 2002, Fanning was assigned to be the sales division's Aspect Channel Manager. Id. at ¶ 22. Fanning had previously worked for Aspect Communications, along with Jeschke. See Def.'s Memorandum in Support of Summary Judgment ("Mem. in Supp.") at 2 [Doc. No. 39]. In October 2002, Durgin was replaced by Steve Sotwick as Vice President of Sales. See Def.'s Stat. at ¶ 26. Myers and Clapp were terminated in November 2002 due to poor sales performance. Id. at ¶ 27.

On January 1, 2003, Fanning became a sales representative in the Northeast region, which covers a territory between Maryland and Maine. Id. at ¶ 29. This territory was viewed by senior management as a crucial territory that could "make or break" Gold Systems. Id. at ¶ 74. For 2003, Fanning's sales quota was $1.5 million in sales. Id. at ¶ 32. Gold Systems alleges Fanning only sold $963,392 in 2003, while Fanning claims he sold $1,080,000 in 2003. Id. at ¶¶ 34-35. In 2003, only Cameron Reid (age 53) met the $1.5 million quota. Id. at ¶ 37. Tom Tasker was the leading sales manager in 2002, selling $2,335,490. Id. at ¶ 41. Of the 2003 sales team, Reid and Tasker are the only two still employed with Gold Systems. Id. at ¶ 42. Steve Testa was terminated

3

for sales performance in October 2003. Id. at ¶ 44.

Sotwick was terminated in February 2004 for sales performance reasons. Id. at ¶ 52. Renquist took over as Vice President of Sales in February 2004, and began in this position by evaluating the sales team over a period of 30 days in order to make recommendations regarding structural changes. Id. at ¶¶ 53-54. Renquist then made the decision to terminate Fanning, to which Gold and Feasby agreed when Renquist met with them.[2] See Plf.'s Stat. at ¶ 66. Fanning was terminated on March 31, 2004. See Def.'s Stat. at ¶ 77. Renquist informed Fanning of his termination, telling him that it was because of a sales issue. Id. at ¶ 78. On the same day as Fanning's termination, two other employees, John Worrell (age 32) and Barb Rigel (age 41), were also terminated. Id. at ¶ 79. Although Rigel was rehired (after Renquist's first choice declined the offer) in April 2004 for the Southwest Division, she was terminated one year later for poor performance. Id. at ¶¶ 80-82. Fanning was replaced by Andy Marcopulos (age 39) in April 2004. Id. at ¶ 83.

## IV.    DISCUSSION

Fanning's federal age discrimination claim is analyzed under the burden-shifting analysis first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (applying McDonnell Douglas in ADEA context); see also Reeves v. Sanderson Plumbing Prods., Inc., 530

---

[2]The parties dispute the extent to which Renquist made the decision to terminate Fanning, with Gold Systems stating that he "recommended" his termination and Fanning stating that he actually made the decision to terminate him. Viewing the evidence in the light most favorable to the plaintiff, the court finds that Renquist appears to have made this decision, albeit with Gold and Feasby in agreement. See Plf.'s Stat. at Ex. C, Renquist Dep. at 243-44; Ex. D, Gold Dep. at 133.

4

U.S. 133, 146-149 (2000). A prima facie case for disparate treatment is made out by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed his job adequately; (3) the plaintiff suffered an adverse employment action; and (4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254.

Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. See id. Upon the employer's articulation of a nondiscriminatory reason for the employment action, the presumption of discrimination that arises with the establishment of the prima facie case drops out. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). The burden then shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendants intentionally discriminated against him in the employment action. Reeves, 530 U.S. at 143. In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. Id.

A prima facie case combined with a showing that an employer's asserted justification is false is sometimes, but not always, sufficient to permit a discrimination claim to survive summary judgment. Schnabel, 232 F.3d at 89-91 (citing Reeves, 530 U.S. at 142). The court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143). The plaintiff need not show that age was the only

5

factor motivating any adverse employment actions he suffered in order to make a showing of employment discrimination. See 42 U.S.C. § 2000e-2(m); Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason," regardless of whether the case is presented as one of single or dual motive. Stratton v. Dep't for the Aging for New York, 132 F.3d 869, 878 (2d Cir.1997).

In connection with the Motion, Gold Systems does not dispute that Fanning has established his prima facie case. According to Gold Systems, its reason for terminating Fanning was "in connection with a company reorganization of the sales division due to poor past sales performance and a weak pipeline for future performance." See Def.'s Mem. in Supp. at 15. In making this statement, Gold Systems points to Fanning's failure to meet the sales quota, the fact that other salespersons, including those in their 30s, were also terminated for failure to produce sales, and the fact that the Northeast territory was considered critical to the plan of Renquist and Gold Systems for improving the company's sales record. See id. at 16-17. Moreover, the parties do not dispute that, while Gold Systems had 115 employees at the time Fanning was hired in 2000, the number of employees declined each year during Fanning's tenure and was down to 49 in 2004, the year Fanning was terminated. See Def.'s Stat. at ¶ 94. Today, Gold Systems has 50 employees. Id. The court finds that this evidence satisfies Gold Systems' burden of production under the McDonnell Douglas test, and the burden of persuasion is now on Fanning to create an issue of material fact as to whether Gold

Systems' articulated reason for his termination was pretextual.

Fanning has admitted that he was never subjected to age-related comments at Gold Systems and that Renquist never made any comments that would suggest a bias against older employees. See Def.'s Stat. at ¶¶ 87-88. Fanning does claim that Renquist suddenly fired him with no warning immediately after becoming Vice President of Sales based on his age, and that Gold Systems' "story" about why he was terminated is "ever shifting." See Plf.'s Memorandum in Opposition to Summary Judgment ("Mem. in Opp.") at 1, 15 [Doc. No. 45]. Fanning's evidence includes the following: (1) Fanning never received a warning or reprimand indicating the reason for his termination; (2) very few Gold Systems employees ever made the sales quota, and none was terminated for not having made it; (3) Fanning's sales numbers were strong, as indicated by several forms of recognition; (4) the fact that Myers and Clapp were terminated for poor sales performance is irrelevant to Fanning's claim of discriminatory discharge; and (5) Gold Systems' financial viability was not the reason Fanning was terminated, because he was neither told that this was the reason nor would it insulate Gold Systems from liability.[3] See id. at 15-25.

As an initial matter, the fact that Gold Systems hired Fanning at the age of 63 does not require a grant of summary judgment to Gold Systems. Gold Systems further argues that it should be entitled to the "same actor" inference, which states that "[w]hen the same actor hires a person already within the protected class, and then later fires

---

[3]As Fanning correctly points out, "even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons." Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 111 (2d Cir. 1992).

7

that same person, 'it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire.'" Carlton v. Mystic Transp., Inc., 202 F.3d 129, 138 (2d Cir. 2000) (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)).[4]  However, there is a dispute of fact regarding whether Fanning was hired by individuals different from the persons who terminated his employment.  According to Gold Systems, Renquist, Feasby, and Gold were involved in the decision to hire Fanning at 63 and to terminate him four years later, and the latter two decisionmakers are also members of the protected age group.[5]  See Def.'s Mem. in Supp. at 24.  Fanning claims that he met eight people during the hiring process, see Plf.'s Stat. at ¶ 9, Fanning Dep. at 11, and that it was Jeschke who made the decision to hire him and Renquist who made the decision to terminate him, see id. at Ex. B, Fanning Dep. at 10; Ex. C, Renquist Dep. at 75, 243-44; Ex. D, Gold Dep. at 133.  Fanning further claims that, even if Renquist interviewed him upon hiring, which he does not remember, see Def.'s Reply at Ex. F, Fanning Dep. at 12, Renquist was not Vice President of Sales at the time and so Fanning would not be working directly under him.  See Plf.'s Mem. in Opp. at 25.  The court finds that there is sufficient evidence to create an issue of fact regarding who were the actual decisionmakers in Fanning's hiring and termination, and the fact that Fanning began working for Gold Systems at age 63 does

---

[4]The Second Circuit has also held that, "[t]he proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable." Danzer v. Norden Systems, Inc., 151 F.3d 50, 55 (2d Cir. 1998).

[5]Although Gold Systems points out that "it employs numerous individuals within the protected age group, such evidence is not dispositive." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 138 (2d Cir. 2002).

8

not compel an inference that his termination was not motivated by age discrimination.

Indeed, the court finds that the sum of the evidence to which Fanning draws the court's attention is sufficient to create an issue of fact as to whether Gold Systems' proffered reasons for terminating him were a pretext for unlawful age discrimination. Fanning has presented evidence that Gold Systems gave some employees warnings or performance improvement plans, and Renquist testified that, even if there was no official policy to provide such documentation prior to terminating employees, in ten years at the company he has given five to ten performance improvement plans. See Plf.'s Stat. at ¶ 91; Ex. C, Renquist Dep. at 50-51. Additionally, although Fanning did not meet the sales quota for 2003, few employees appear to have met this quota, and Renquist in fact admitted that not all employees were expected to make quota (but only 70 %), see id. at Ex. C, Renquist Dep. at 143, and Gold admitted that the quota is not a condition of employment, see id. at Ex. D, Gold Dep. at 86.

Moreover, Fanning claims that his sales figure for the Northeast territory in 2003 in fact doubled the prior year's sales output for that territory, see Plf.'s Stat. at Ex. B, Fanning Dep. at 129, and Fanning also received several awards during his tenure at Gold Systems which at least create an issue of fact concerning to his performance record. Although Gold Systems challenges the Spiff Awards as not being significant, for they are commonly awarded based on a nomination within the department, see Def.'s Reply at Ex. A, Renquist Dep. at 270; Ex. B, Gold Dep. at 120, Gold also testified that he was "baffled" by Fanning having received an Outstanding Sales Performance Award in July 2003, which was based on a very large sale by Fanning, see Plf.'s Stat. at Ex. D, Gold Dep. at 108. Additionally, Gold Systems conceded at oral

9

argument, held on March 12, 2007, that Fanning has created an issue of fact as to whether Renquist spoke to him about his "sales vision" for 2004, which was one of Gold Systems' articulated bases for terminating Fanning. See Plf.'s Mem. in Opp. at 23; Ex. B, Fanning Dep. at 106; see also Def.'s Mem. in Supp. at 17.

Thus, for the reasons discussed above, Fanning's prima facie case and evidence of pretext create an issue of fact as to whether Fanning's termination was motived by age-based reasons. The court holds that Fanning has proffered sufficient evidence to permit a jury to find that his termination was motivated by age discrimination. Whether a jury will make such a finding is an open question. The court denies Gold Systems' motion for summary judgment.

**V.    CONCLUSION**

For the foregoing reasons, Gold Systems' motion for summary judgment [**Doc. No. 38**] is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of March, 2007.

      /s/ Janet C. Hall
      Janet C. Hall
      United States District Judge